AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

FILED by _____ D.C.
AUG 2 3 2017
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Juan Carlos ESTRADA-Villalobos, a/k/a "Guero," Victor Villalobos, and Gerardo PEREZ-Bermudez | ) ) ) ) | Case No. 17-8359-WM |
| _____ | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __August 22, 2017__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 21, United States Code, Section 841(a)(1) | Possession with Intent to Distribute a controlled substance, namely a mixture or substance containing a detectable amount of methamphetamine. |

This criminal complaint is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

DEA TFO Eric D. Gilbert
*Printed name and title*

Sworn to before me and signed in my presence.

Date: August 23, 2017

_____
*Judge's signature*

City and state: West Palm Beach, FL

William Matthewman, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT
## ERIC D. GILBERT
## TASK FORCE OFFICER
## DRUG ENFORCEMENT ADMINISTRATION

I, Eric D. Gilbert, a Task Force Officer of the Drug Enforcement Administration (DEA), United States Department of Justice, first being duly sworn, depose and say:

1. I am a Task Force Officer and law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510 (7). I am, therefore, an officer who is empowered to conduct criminal investigations of, and to make arrests for the offenses enumerated in Title 18, United States Code, Section 2516.

2. I have been employed as a Task Force Officer of the DEA since August 2011 and am currently assigned to the West Palm Beach, Florida, District Office. During my tenure with DEA I have conducted investigations and have been instructed in techniques dealing with the unlawful distribution of narcotics, possession with the intent to distribute controlled substances, the use of communication facilities to conduct narcotics transactions, the importation of controlled substances, the collection of money that represents the proceeds of narcotics trafficking, money laundering, and associated conspiracies, in violation of Title 21 and Title 18 of the United States Code. In addition to my assignment as a Task Force Officer with DEA, I am also employed as a Detective with the Jupiter Police Department. I have been a sworn police officer for approximately 19 years.

3. This affidavit is based upon my own knowledge, as well as, information provided to me by other law enforcement officers. This affidavit does not set forth every fact known to me regarding the investigation, but only those facts necessary to establish probable cause to believe that Juan Carlos ESTRADA-Villalobos, Victor Villalobos, and Gerardo PEREZ-Bermudez, have committed the criminal offense of Possession with Intent to Distribute a controlled substance, namely a mixture or substance containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1).

4. In May, 2017, law enforcement agents received information from a Cooperating Defendant (CD), regarding a subject in Atlanta, Georgia, who is a source of supply for crystal methamphetamine. The CD has provided information to assist with previous investigations and such information has been independently corroborated by law enforcement. The CD has been assisting agents with the DEA, West Palm Beach District Office since approximately March 2017. Throughout that time the CD has always provided reliable information. The CD is cooperating with law enforcement in the hopes of receiving judicial consideration in regards to a pending criminal case. For ease of reference, the CD will be referred to herein in the masculine gender, even though this may not be reflective of the CD's true gender. The CD advised law enforcement that in early May, 2017, he was contacted by a male subject known only to the CD as "GUERO." The CD stated that GUERO is a Hispanic male, approximately 35-40 years old, who lives in the area of Atlanta, Georgia. The CD added that he knew GUERO as a source of supply for multi-kilogram quantities of crystal methamphetamine, who usually moved 25-75 kilograms per load. According to the CD, GUERO usually charged approximately $8,500 per kilogram. During their contact, GUERO spoke with the CD about assisting with the acquisition of crystal methamphetamine customers, along with the sale and transportation of multi-kilogram amounts of crystal methamphetamine to South Florida. The CD provided law enforcement agents with GUERO's Sprint telephone number of 770-652-0106 (Target Cell Phone #1). The CD told agents that he had already informed GUERO he had a customer, an undercover agent (UC #1), in South Florida that he could introduce him to. Law enforcement agents were subsequently able to positively identify GUERO as Juan Carlos ESTRADA-Villalobos.

5. On May 31, 2017, the CD met with law enforcement agents in anticipation of introducing UC #1, posing as a new crystal methamphetamine customer, directly to ESTRADA-Villalobos. While meeting with law enforcement on this date, the CD placed a consensually recorded and monitored telephone call to Target Cell Phone #1. During the telephone call, the CD told

ESTRADA-Villalobos that he was present with the new customer for crystal methamphetamine. The CD told ESTRADA-Villalobos that he had explained to the customer the reason that ESTRADA-Villalobos had not yet traveled to South Florida to meet with him was that ESTRADA-Villalobos had encountered a family emergency. The CD advised ESTRADA-Villalobos that he was on speaker phone and was going to put the customer on the phone also. UC #1 and ESTRADA-Villalobos then greeted each other. UC #1 told ESTRADA-Villalobos that he was waiting for him, but he (ESTRADA-Villalobos) never showed up. ESTRADA-Villalobos told UC #1 that he had a family emergency and couldn't travel yet. UC #1 asked when ESTRADA-Villalobos would be able to come to South Florida. ESTRADA-Villalobos stated that they could meet in South Florida on Friday (June 2, 2017).

6. In addition to the information outlined above, information gathered from telephone toll analysis revealed that Target Cell Phone #1 was in contact with telephone numbers in various locations such as Texas, California, Pennsylvania, and Oregon. Through training and experience, I am aware that Texas, and California are routes frequently utilized by narcotics traffickers to enter the United States, and this is consistent with information received by the CD that the origin of the crystal methamphetamine is Mexico.

7. On June 2, 2017, ESTRADA-Villalobos traveled to South Florida to meet with UC #1. On this date at about 3:40 p.m., ESTRADA-Villalobos arrived to meet with the CD at a Denny's Restaurant located at 4102 West Blue Heron Boulevard, West Palm Beach, Florida. Surveillance agents observed that after meeting at the Denny's for a short time, the CD had ESTRADA-Villalobos follow him to the Amigos Spanish Cuban Restaurant, 4720 Okeechobee Boulevard, West Palm Beach, Florida, where they were to meet with UC #1. Surveillance agents also observed that ESTRADA-Villalobos was driving a black Dodge pickup truck bearing Georgia registration plate, RHN7323, and had an unknown Hispanic male traveling with him. At about 4:14 p.m., the CD and

3

ESTRADA-Villalobos arrived at the Amigos Spanish Cuban Restaurant, as observed by agents. Within several minutes UC #1 and a second undercover agent (UC #2), who was posing as UC #1's narcotics business partner, arrived at the meeting location. The meeting occurred within the Amigos restaurant. UC #1 engaged in conversation with ESTRADA-Villalobos regarding the quality and price per pound for the crystal methamphetamine that ESTRADA-Villalobos would be able to provide. ESTRADA-Villalobos also told UC #1 that he could provide as much as 20-30 pounds of crystal methamphetamine right away. Before the meeting concluded, UC #1 and ESTRADA-Villalobos agreed that they were both going to obtain new cellular telephones and speak again soon.

8. On June 8, 2017, at approximately 7:00 p.m., UC #1 received a telephone call from Target Cell Phone #1, being used by ESTRADA-Villalobos. UC #1 told ESTRADA-Villalobos that he would call him right back. The telephone call was not recorded. At approximately 7:03 p.m., UC#1 placed an outgoing call to Target Cell Phone #1, used by ESTRADA-Villalobos. During a short conversation ESTRADA-Villalobos advised UC #1 that he (ESTRADA-Villalobos) was receiving a load of crystal methamphetamine sometime between Sunday (June 11, 2017), and Tuesday (June 13, 2017). ESTRADA-Villalobos stated that he would be ready to send some crystal methamphetamine to UC #1 as soon as it arrived, and UC #1 could possibly have the narcotics early the next week, beginning June 11, 2017. UC #1 told ESTRADA-Villalobos that he would be ready as long as ESTRADA-Villalobos was sending between 50-60 pounds of crystal methamphetamine. ESTRADA-Villalobos affirmed and both subjects agreed to speak again soon.

9. Later the same date, UC#1 observed that he had received a WhatsApp voice message from ESTRADA-Villalobos using Target Cell Phone #1 asking UC#1 to call him and two additional text messages advising to call him at telephone number 404-734-6352 (Target Cell Phone #2).

10. On June 18, 2017, beginning at approximately 8:57 p.m., through August 21, 2017, there were a series of recorded telephone calls between UC#1 and ESTRADA, who was now utilizing

4

Target Cell Phone #2. During the calls, UC#1 and ESTRADA-Villalobos continued to negotiate the purchase and the delivery of multiple pounds of crystal methamphetamine.

11. Specifically, on August 17, 2017, at approximately 5:44 p.m., UC #1 received an incoming call from ESTRADA-Villalobos utilizing Target Cell Phone #2. During a short conversation, ESTRADA-Villalobos told UC #1 that he was "ready" and that he had to personally go down there because he couldn't keep waiting. UC#1 told ESTRADA-Villalobos to drive straight down to South Florida. ESTRADA-Villalobos told UC#1 that he had to drop someone off that was with him. ESTRADA-Villalobos asked UC#1 if they could see each other on Saturday (referring to Saturday, August 19, 2017) because he wanted to get some rest as it had been a long trip. UC#1 agreed to meet with ESTRADA on Saturday. ESTRADA-Villalobos told UC#1 that he would be arrive on Saturday between 2 p.m. and 5 p.m., but that he would give UC #1 a call. On the same date at approximately 5:47 p.m., UC#1 placed a call to ESTRADA-Villalobos to inform him that UC#1 forgot he wasn't going to be available on Saturday. ESTRADA-Villalobos told UC#1 that he would leave on Sunday to see each other early Monday.

12. On August 20, 2017, at approximately 9:43 p.m., UC#1 received an incoming call. UC#1 was not able to answer the call. At approximately 9:46 p.m., UC#1 placed an outgoing call to ESTRADA-Villalobos at Target Cell Phone #2. During the call, ESTRADA-Villalobos told UC#1 that he would be seeing him the following day (Monday August 21, 2017). UC#1 asked ESTRADA-Villalobos around what time. ESTRADA-Villalobos told UC#1 around 3 or 4 p.m., and that he would call UC#1. UC#1 told ESTRADA-Villalobos that he would wait for his call.

13. Throughout the day of August 21, 2017, UC#1 was in telephone contact with ESTRADA-Villalobos who stated that he was on his way to South Florida. At about 5:53 p.m., UC #1 received a text message from Target Cell Phone #2. The text message advised that ESTRADA-

Villalobos had gotten a flat tire. The message also contained a screenshot of ESTRADA-Villalobos' location which was approximately 2 hours and 45 minutes away from Palm Beach County, Florida.

14. Additionally on August 21, 2017, law enforcement applied for and obtained a federal search warrant to receive location information for Target Cell Phone #1 and Target Cell Phone #2. At about 1:00 a.m. on August 22, 2017, DEA began receiving the location information from both cellular telephones. Agents utilized the location information, along with surveillance units, and determined that ESTRADA-Villalobos' black Dodge pickup truck bearing Georgia registration plate, RHN7323, was parked in the driveway at 658 S.E. Streamlet Avenue, Port St. Lucie, Florida. Surveillance agents also observed a white Chevrolet van, bearing Georgia registration plate RFY7887, parked in the driveway of the residence.

15. Starting at about 12:20 p.m., on August 22, 2017, UC #1 engaged in a series of telephone communications with ESTRADA-Villalobos to arrange a final meeting location for the controlled delivery of the crystal methamphetamine. Based upon these communications, UC #1 and ESTRADA-Villalobos agreed to meet at a Home Depot, located at 6800 Okeechobee Boulevard, West Palm Beach, within the Southern District of Florida. At about 2:30 p.m. surveillance agents observed the white Chevrolet van arrive and park in the Home Depot parking lot. Several minutes later ESTRADA-Villalobos arrived in the black Dodge pickup truck. ESTRADA-Villalobos drove around the parking lot for a short time while talking to UC #1 by telephone, until he parked the black Dodge near UC #1 and UC #2's vehicle. ESTRADA-Villalobos exited the truck and made contact with UC #1 and UC #2, who were standing in the parking lot by their vehicle. A short conversation ensued about ESTRADA-Villalobos' trip to South Florida. Then UC #1 asked ESTRADA-Villalobos how much money he needed to get counted because UC #1 was never told exactly how much crystal methamphetamine was being delivered. ESTRADA-Villalobos stated that he had 20 pounds and he could provide 50-60 pounds if they were needed the next day. ESTRADA-Villalobos then said that

he would just need to make a call and the 50-60 pounds could be in South Florida in two days. UC #1 then asked ESTRADA-Villalobos how they were going to conduct the transaction today. ESTRADA-Villalobos stated that he had it in a loose tire. UC #1 next asked if they could open the tire, in an effort to observe the narcotics. ESTRADA-Villalobos affirmed and then placed a telephone call to an unknown telephone number while walking a short distance away from UC#1 and UC#2. When he returned, ESTRADA-Villalobos began talking about the process of packing the crystal methamphetamine into the tires, how he has workers cook the crystal methamphetamine, and how he cooks some of it himself. ESTRADA-Villalobos stated that he was going to cook the next batch himself.

16. At about 2:53 p.m., the white Chevrolet van moved from its parking spot, and traveled around the parking lot for a short time, finally pulling close to, and parking near, the black Dodge truck and the undercover vehicle. Agents later determined that the van was occupied by Victor Villalobos (V. Villalobos) as the driver, and Gerardo PEREZ-Bermudez (PEREZ-Bermudez) as the passenger. Once the van had stopped, UC#1 and ESTRADA-Villalobos agreed that UC#1 would view some of the crystal methamphetamine inside of the van. PEREZ-Bermudez then climbed from the passenger seat through the van into the cargo portion. PEREZ-Bermudez then returned to the front portion of the van and handed V. Villalobos an object wrapped in plastic. PEREZ-Bermudez then exited the passenger side of the van leaving the door open. UC#1 then approached the passenger door and leaned in. PEREZ-Bermudez then handed UC#1 a knife to cut through the plastic wrap and view the crystal methamphetamine. Upon seeing that the package contained what was believed to be crystal methamphetamine UC#1 stated that it looked good. UC#2 then asked V. Villalobos to unlock the rear door so that he could remove the tire. During this time a predetermined take down signal was given and members of the PBSO SWAT Team and agents moved in and took ESTRADA-Villalobos, PEREZ-Bermudez, and V. Villalobos, into custody.

7

8

17. Agents later conducted a field test of the suspected crystal methamphetamine located in and seized from the tire which yielded a positive result. Agents also determined that the spare tire contained 20 packages of crystal methamphetamine that totaled approximately 4.92 kilograms.

18. Based on the foregoing, I believe there exists sufficient probable cause to believe that Juan Carlos Villalobos-ESTRADA, Victor Villalobos, and Gerardo PEREZ-Bermudez, have committed the criminal offense of Possession with Intent to Distribute a controlled substance, namely a mixture or substance containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1).

FURTHER AFFIANT SAITH NAUGHT.

_____
ERIC GILBERT
TASK FORCE OFFICER
U.S. DRUG ENFORCEMENT ADMINISTRATION

Sworn and subscribed before me this 23rd day of August, 2017, in West Palm Beach, Florida.

_____
WILLIAM MATTHEWAN
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:**  JUAN CARLOS ESTRADA-VILLALOBOS, a/k/a "Guero"

**Case No.:** _____

Count #:  1

Possession with Intent to Distribute a controlled substance, namely a mixture or substance containing a detectable amount of methamphetamine.

Title 21, United States Code, Section 841(a)(1).

**\* Max.Penalty**:    mandatory minimum 10 years imprisonment to up to a maximum of life; mandatory minimum of 5 years up to a maximum of lifetime supervised release; $10 million fine, $100 special assessment.

**\*   Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** VICTOR VILLALOBOS

**Case No.:** _____

Count #: 1

Possession with Intent to Distribute a controlled substance, namely a mixture or substance containing a detectable amount of methamphetamine.

Title 21, United States Code, Section 841(a)(1).

**\* Max.Penalty:** mandatory minimum 10 years imprisonment to up to a maximum of life; mandatory minimum of 5 years up to a maximum of lifetime supervised release; $10 million fine, $100 special assessment.

\*   **Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**  GERARDO PEREZ-BERMUDEZ

**Case No.:** _____

Count #:  1

Possession with Intent to Distribute a controlled substance, namely a mixture or substance containing a detectable amount of methamphetamine.

Title 21, United States Code, Section 841(a)(1).

**\* Max.Penalty**:    mandatory minimum 10 years imprisonment to up to a maximum of life; mandatory minimum of 5 years up to a maximum of lifetime supervised release; $10 million fine, $100 special assessment.

\*   Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.